UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STEVE MANN and
DEANNA MANN,

                Plaintiffs,        Civil Action No. 12-cv-14097
                                         Honorable Sean F. Cox
                                         Magistrate Judge David R. Grand

   v.

EQUIFAX INFORMATION SERVICES,
LLC, ALLY FINANCIAL, INC., NISSAN
MOTOR ACCEPTANCE CORPORATION,
and HSBC BANK USA, NA,

                Defendants.
_____/

### REPORT AND RECOMMENDATION TO GRANT DEFENDANT NISSAN MOTOR ACCEPTANCE CORPORATION'S MOTION TO DISMISS AND COMPEL ARBITRATION [37]

In this action Plaintiff Deanna Mann ("Mann") alleges that Defendant Nissan Motor Acceptance Corporation ("NMAC")[1] violated her rights under the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. (the "FRCA") by reporting a debt to the credit bureaus that had been discharged in bankruptcy. On April 3, 2013, NMAC filed a Motion to Dismiss and Compel Arbitration (the "Motion") [37], which has been referred to this court for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons discussed below, the court RECOMMENDS that NMAC's Motion be GRANTED.

---

[1] NMAC is the sole remaining defendant in this action, the others have settled with Plaintiffs. [25, 29, 31, 35].

I. **BACKGROUND**

    A. **Mann's Relationship with NMAC and the Alleged Violation of Law**

On February 3, 2007, Mann purchased a 2007 Nissan Armada pursuant to a Retail Installment Sale Contract (the "Contract") between she and the dealer. Thereafter, the dealer assigned the Contract to NMAC. Mann claims that on July 22, 2009, she and her husband (Plaintiff Steve Mann) received a Chapter 7 Bankruptcy discharge of their debts, including the balance remaining due on the Contract at that time. Thus, they claim that as of that date "there should [have been] no balances reported [to the credit reporting agencies]." Cplt. at ¶¶ 5-6.

In June 2012, Mann reviewed her credit files as issued by the three main credit reporting agencies, Experian, Equifax and Trans Union (the "CRAs"), and noted that those reports listed a debt to NMAC which she claims was discharged. *Id.*, ¶ 16. She alleges that despite her efforts to have the debt removed from her credit reports, "[NMAC] continue[d] to report its trade line twice…reflecting that she owes a balance of $20,974." *Id.* at ¶ 22(b).[2]

On September 18, 2012, the Manns commenced this action against, *inter alia*, various creditors who were still reporting debts owed to them despite the fact that they had been extinguished by the Manns' Chapter 7 discharge. Specifically Mann brought claims for Negligent and Willful Violation of the FCRA against NMAC, alleging, *inter alia*, that it "failed to conduct a proper reinvestigation of Mrs. Mann's dispute as required by [the FCRA]," "failed to review all relevant information…," and "failed to direct all of the [CRAs] to remove or update its trade lines." *Id.* at ¶¶ 62-63. *See also id.* at ¶¶ 61-71. Mann claims that she "suffered damages, mental anguish, suffering humiliation and embarrassment" as a result of NMAC's continued reporting of the trade line. *Id.* at ¶ 65.

---

[2] The reports also listed debts owed to the other Defendants.

**B.     Activity Subsequent to Plaintiffs' Commencement of this Action**

Plaintiffs served NMAC with a copy of their Complaint on September 24, 2012. [6]. NMAC's counsel filed an appearance on October 9, 2012. [7]. NMAC filed its Answer and Affirmative Defenses on October 29, 2012. [8]. One of those affirmative defenses stated: "NMAC relies upon any all releases or agreements to arbitrate which have been signed by the Plaintiffs, barring actions for damages arising out of any dispute or controversy relating to the application for credit, the Contract, or any resulting transaction or relationship including that with a motor vehicle dealer or third party arising out of the agreement." [8 at 12].

Thereafter, Plaintiffs appear to have focused their energies on settling the case with the other defendants. At any rate, it is undisputed that it was not until February 14, 2013, that NMAC's counsel e-mailed Plaintiffs' counsel to introduce himself in advance of a scheduling conference that had been set for March 4, 2013 before Judge Cox, and that there had been no communications between the two counsel prior. [37-3]. The scheduling conference took place [3/4/13 docket entry] and Judge Cox requested that NMAC and Plaintiffs pursue settlement, with Plaintiffs making an initial demand. [37-4]. The parties were unable to settle the matter. Thus, as of March 4, 2013, other than their brief and limited settlement efforts, NMAC and Plaintiffs had done essentially no work to advance the litigation.

Plaintiffs had not attached any exhibits to their complaint, and it was not until March 21, 2013, that Mann provided NMAC with basic details about Mann's claims. [42-13 ("I am attaching the following documents for your review…")]. NMAC asserts that, armed with that information, it was able to retrieve and review the relevant file, which turned up the underlying Contract. [37-2]. That Contract includes an Arbitration Agreement, which provides:

> EITHER YOU OR WE MAY CHOOSE TO HAVE ANY DISPUTE
> BETWEEN US DECIDED BY ARBITRATION AND NOT IN COURT OR

> BY JURY TRIAL…Any claim or dispute, whether in contract, tort, statute or otherwise [] between you and us [] which arise out of relate to your credit application, purchase or condition of this vehicle, your purchase or financing contract or any resulting transaction or relationship (including any such relationship with third parties []) shall at your or our election, be resolved by neutral, binding arbitration and not by a court action.

[37-2 at 11] (the "Arbitration Agreement").

Regardless of why NMAC did not locate the Contract sooner, it is undisputed that on March 29, 2013 – a mere 8 days after receiving the details underlying Mann's claim – NMAC's counsel advised Mann's counsel that NMAC was invoking the Arbitration Agreement, and that NMAC would file a motion to compel arbitration if Mann did not consent to arbitrate the dispute. [37-6].

Importantly, virtually no discovery of any kind took place between NMAC and Mann prior to NMAC's March 29, 2013 communication advising Mann of its intent to arbitrate the dispute. As indicated above, Mann made a very limited document production to NMAC, providing only basic information about Mann's claim. On March 7, 2013, Mann also served a set of Interrogatories and Requests for Production of Documents on NMAC. However, NMAC did not respond to Mann's written discovery requests, and served no such discovery requests of its own. Neither side took any depositions.[3]

Mann refused to consent to arbitrate the dispute, leading NMAC to file the instant Motion seeking to compel arbitration. [37]. Mann filed a response [42], and NMAC filed a reply [43]. The court heard oral argument on May 20, 2013.

---

[3] On March 7, 2013, Mann served a 30(b)(6) deposition notice to depose a corporate representative of NMAC on various topics. [42-10]. However, that notice included neither a date, time or place for the deposition. Two weeks later, NMAC served a similar "placeholder" notice to depose Mann, again with no date, time or place specified. [42-12].

**II.     ANALYSIS**

NMAC moves to compel arbitration and to dismiss the instant complaint for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1).  *See Multiband Corp. v. Block*, 2012 WL 1843261, at *5 (E.D. Mich., May 21, 2012) (explaining that substantively a motion to compel arbitration is a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction); *MRI Scan Center, LLC v. National Imaging Associates, Inc.*, 2013 WL 1899689, at *2 (S.D. Fla., May 7, 2013) ("courts generally treat motions to compel arbitration as motions to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1).")  Such a motion may be based on either a facial attack or a factual attack on the complaint's allegations.  *Tri-Corp. Mgmt. Co. v. Praznik*, 33 F. App'x 742, 745 (6th Cir. 2002).  When the court reviews a factual attack on subject matter jurisdiction, as it is asked to do here, no presumption of truthfulness applies to the complaint's factual allegations.  *United States v. Ritchie*, 15 F.3d 592, 498 (6th Cir. 1994).  "The Court may rely on affidavits or any other evidence properly before it and has wide latitude to collect evidence to determine the issue of subject matter jurisdiction."  *Multiband*, at *5 (citing *Rogers v. Stratton Indus.*, 798 F.2d 913, 915 (6th Cir.1986)).

The parties here do not dispute that, if the Arbitration Agreement applies to their dispute and has not been nullified or otherwise waived, this action should be dismissed in favor of having Mann's claims resolved in arbitration.  *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir.2000) ("Under the Federal Arbitration Act, 9 U.S.C. § 1 et seq., ('FAA'), a written agreement to arbitrate disputes, which arises out of a contract involving transactions in interstate commerce shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.").  Mann raises three arguments as to why the court should not compel arbitration: (1) her Chapter 7 bankruptcy discharge "terminated" the

Arbitration Agreement; (2) the Arbitration Agreement does not apply to the claims she raises against NMAC; and (3) NMAC waived its right to compel arbitration in this matter by failing to timely file the instant Motion. None of Mann's arguments are persuasive.

Before turning to the parties' specific arguments, the court notes the well-settled principles that federal policy favors arbitration, and that federal courts are to "rigorously enforce agreements to arbitrate." *Wilson Electrical Contractors, Inc. v. Minnotte Contracting Corp.*, 878 F.2d 167, 169 (6th Cir. 1989). Moreover, "[t]he Arbitration Act establishes that, as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration..." *Moses H. Cone Memorial Hospital v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983).

### A. Mann's Bankruptcy Discharge Did Not Terminate the Arbitration Agreement

Mann's first argument is that her Chapter 7 bankruptcy discharge "terminated" or "discharged" the Arbitration Agreement. [42 at 10]. The court disagrees. Although the underlying debt Mann owed to NMAC was discharged in her bankruptcy case, she cited no binding case law which would require this court to find that the discharge also applied to the Arbitration Agreement. Instead, Mann cited two non-binding, unpublished opinions, *Jernstad v. Green Tree Servicing, Inc.*, 2012 U.S. Dist. LEXIS 108988 (N.D. Ill., 2012) and *Harrier v. Verizon Wireless Personal Communications*, 2012 U.S. Dist. LEXIS 142428 (M.D. Fla., 2012), without providing any actual analysis of either case. Mann merely concludes that if the court were to enforce the Arbitration Agreement "Plaintiffs would be denied a fresh start which is 'one of the central purposes of the Bankruptcy Code.'" [42 at 11] (quoting *Jernstad*, at *6).

The court does not find the cases cited by Mann to be applicable here, and it declines to follow them. For example, in *Jernstad*, the debtor (Jernstad) defaulted on his mortgage, and later

6

obtained a Chapter 7 discharge of the balance owed to the bank. After Jernstad obtained the discharge, the bank allegedly violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., by making harassing phone calls to him and his family. Jernstad commenced a proceeding in federal district court against the bank for these alleged violations, and the bank moved to compel arbitration of the matter pursuant to an arbitration provision that was contained in the underlying mortgage. The district court found that the "discharge rendered the parties' Arbitration Agreement unenforceable." *Jernstad*, at *6.

*Jernstad* is distinguishable from the instant case because the debtor's claim in *Jernstad* arose directly out of the bank's attempt to collect a discharged debt – something Mann does not accuse NMAC of doing here. As the district court explained, a discharge "operates as an injunction against the commencement or continuation of an action [to collect the debt]…" *Id.* at *3 (quoting 11 U.S.C. § 524(a)(2)). The court went on to explain that "the sole remedy for a violation of § 524 is a contempt action brought in the bankruptcy court that issued the order of discharge." *Id.* at *3-4 (citation omitted). Thus, enforcing the arbitration provision in *Jernstad* would necessarily have conflicted with the Bankruptcy Code, and may, in that sense, have denied Jernstad the "fresh start" to which he was entitled with respect to that debt.[4] *Id.* at *6.

The court finds more persuasive the rule applied in *In re. Eber*, 687 F.3d 1123, 1129 (9th Cir. 2012), that "[t]he relevant inquiry [in deciding an issue like the one before this court] becomes 'whether there is an inherent conflict between arbitration and the underlying purposes of the Bankruptcy Code.'" *Id.* (quoting *In re Thorpe Insulation Co.*, 671 F.3d 1011 (9th Cir.

---

[4] The court finds part of the reasoning in *Jernstad* to be unpersuasive, at least for the reasons urged by Mann. In the very sentence after concluding that the "discharge rendered the parties' Arbitration Agreement unenforceable," the district court stated, "What is discharged ***is a claim to payment***." *Id.* at *6 (emphasis added). An arbitration agreement, however, is not a "claim to payment," but rather merely defines the venue in which a claim to payment is to be resolved.

7

2012).  The court noted, that "a bankruptcy court has discretion to decline to enforce an otherwise applicable arbitration provision only if arbitration would conflict with the underlying purposes of the Bankruptcy Code."  *Id.* (quoting *Thorpe* at 1021).  This is akin (albeit not identical) to the reasoning in *In re. Hermoyian*, 435 BR 456 (E.D. Mich. 2010), where the bankruptcy court held that, "A bankruptcy court has no discretion, and is required to allow arbitrators to go forward with respect to non-core matters."  *Id.* at 463.

Here, the court sees no inherent conflict between the Bankruptcy Code's purposes and enforcing the Arbitration Agreement with respect to Mann's post-discharge FCRA action against NMAC.  The Arbitration Agreement is only in play because of Mann's FCRA claim, not because NMAC is attempting to collect a debt that has been discharged.  The matter certainly is not a "core" part of Mann's bankruptcy proceedings.  Moreover, simply enforcing a provision which defines the venue for resolving their instant dispute does not deprive Mann of the "fresh start" granted by the Bankruptcy Code, because it imposes on her no financial liability whatsoever, and would not undermine any Bankruptcy Code provision.  *Cf. Jernstad, supra* (enforcing arbitration provision would conflict with 11 U.S.C. §524(a)(2)'s requirement that claim be resolved exclusively in bankruptcy court.).

In sum, the mere fact that Mann was granted a discharge of the *debt* owed to NMAC does not mean that the Arbitration Agreement executed in connection with the Contract cannot be enforced with respect to their future disputes which are otherwise covered by that Agreement.

### B. The Arbitration Agreement Applies to Mann's FCRA Claim

This brings the court to Mann's second argument – that the Arbitration Agreement does not apply to her FCRA claim against NMAC because that claim falls outside the Agreement's terms.  The court disagrees.  The Arbitration Agreement is extremely broad, and applies to:

> Any claim or dispute, whether in contract, tort, statute or otherwise [] between you and us [] which arise out of relate to your credit application, purchase or condition of this vehicle, your purchase or financing contract **or any resulting transaction or relationship** (including any such relationship with third parties []) shall at your or our election, be resolved by neutral, binding arbitration and not by a court action.

[37-2 at 11] (emphasis added).

Here, Mann's claim clearly arises out of a "transaction or relationship" that resulted from her obtaining credit with NMAC. NMAC only came into Mann's credit information because she supplied that information in order to obtain financing to purchase the car. Not that foreseeability is a relevant consideration, but the court notes that it was certainly foreseeable (if not known) to Mann that as a result of her obtaining credit with NMAC it would report her credit information to the various CRAs. Thus, application of the Arbitration Agreement to Mann's FCRA claim should not surprise her. The court's conclusion that the Arbitration Agreement applies to Mann's claim is also bolstered by the fact that federal policy strongly favors arbitration, *Wilson*, 878 F.2d at 169, and that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Mercury Construction*, 460 U.S. at 24-25.

    **C.**    **NMAC Did Not Waive Its Right to Enforce the Arbitration Agreement**

Mann's final argument, that NMAC waived its right to enforce the arbitration agreement, also fails. As the Sixth Circuit recently explained, "because of the strong presumption in favor of arbitration, waiver of the right to arbitrate is not to be lightly inferred." *Johnson Associates Corp. v. HL Operating Corp.*, 680 F.3d 713, 715 (6th Cir. 2012) (quoting *Glazer v. Lehman Bros., Inc.*, 394 F.3d 444, 450 (6th Cir. 2005)). The Sixth Circuit further explained that "a party may waive an agreement to arbitrate by engaging in two courses of conduct: (1) taking actions that are completely inconsistent with any reliance on an arbitration agreement; and (2) 'delaying its assertion to such an extent that the opposing party incurs actual prejudice.'" *Id.* (citations

9

omitted). Here, both prongs favor a finding that NMAC did not waive the Arbitration Agreement.

With respect to the first prong, the court notes that NMAC included in its affirmative defenses that it was relying "upon any all releases or agreements to arbitrate which have been signed by the Plaintiffs… arising out of any dispute or controversy relating to the application for credit, the Contract…" [8 at 12]. *Cf. Johnson* at 718 (a defendant's failure to raise arbitration as an affirmative defense shows his intent to litigate rather than arbitrate."); *id.* ("Once the defendant, by answer, has given notice of insisting on arbitration the burden is heavy on the party seeking to prove waiver.") (quoting *Gen. Guar. Ins. Co. v. New Orleans Gen. Agency, Inc.*, 427 F.2d 924, 927 (5th Cir. 1970)). Moreover, as explained in detail above, *supra* at 3-4, the only affirmative action NMAC took in this case that could even arguably be construed as a waiver of the right to arbitrate was to serve a single placeholder deposition notice for Mann's deposition, with no date, no time, and no place specified, in response to one served by Mann. NMAC did not actually take any depositions. Nor did it produce any witnesses for deposition. It refused to answer Plaintiffs' discovery requests. And it served no discovery requests of its own. On these facts, it cannot be said that NMAC took actions "that are completely inconsistent with any reliance on an arbitration agreement." *Johnson*, 680 F.3d at 715.

Nor can it be said that NMAC 'delay[ed] its assertion to such an extent that the opposing party incurs actual prejudice.'" *Id.* Absolutely nothing happened in this case between NMAC and Mann for months while Plaintiffs settled out with the numerous other defendants they had sued. Only about 3 weeks elapsed between the initial scheduling conference (on March 4, 2013) and NMAC's written request (on March 29, 2013) that Mann agree to arbitrate the dispute. *See supra* at 3-4. And, only 8 days elapsed between Mann's production of basic information about

10

her claim (the disclosure of which was not at all prejudicial) and NMAC's request. *See supra* at 4. Mann has failed to show any prejudice that she will have suffered due to the timing of NMAC's demand to arbitrate. Indeed, when she responded to NMAC's demand to arbitrate the dispute, Mann offered two reasons why she would not be prejudiced:

> Even if the court were to grant [the instant motion], I will pursue this with arbitration in New York. Why? I have two very good reasons. First, Mrs. Mann has a slam dunk case as to liability against your client…The second reason why I would arbitrate this case I because there is a fee shifting provision under the FCRA which means that all of my time in these emails explaining things to you, and building this case will be chargeable to your clients.

[37-6 at 3].

Accordingly, Mann has failed to show that she will be prejudiced by having this dispute resolved in arbitration.

### III.  CONCLUSION

For all of the foregoing reasons, it is **RECOMMENDED** that Defendant's Motion to Dismiss and Compel Arbitration **[37]** be **GRANTED**.

Dated: May 24, 2013         s/David R. Grand
Ann Arbor, Michigan      DAVID R. GRAND
                                            United States Magistrate Judge

### NOTICE TO THE PARTIES REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation and Order, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v.*

*Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation and Order.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. § 636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 24, 2013.

           s/Felicia M. Moses
           FELICIA M. MOSES
           Case Manager